Present:    Judges Humphreys, Petty and Chafin
Argued by teleconference

**PUBLISHED**

MPS HEALTHCARE, INC., d/b/a
  CONTINUUM PEDIATRIC NURSING SERVICES

v.      Record No. 1125-18-2

OPINION BY
JUDGE TERESA M. CHAFIN
JULY 23, 2019

DEPARTMENT OF MEDICAL ASSISTANCE
  SERVICES/COMMONWEALTH OF VIRGINIA

UPON A REHEARING

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Daniel T. Balfour, Judge Designate

Belinda Jones (Jonathan M. Joseph; Harrison M. Gates; Christian &
Barton, L.L.P., on briefs), for appellant.

Usha Koduru, Assistant Attorney General (Mark R. Herring,
Attorney General; Cynthia V. Bailey, Deputy Attorney General;
Kim F. Piner, Senior Assistant Attorney General, on brief), for
appellee.

The Director of the Department of Medical Assistance Services ("DMAS") issued a final

agency decision ("FAD") requiring that MPS Healthcare, Inc., doing business as Continuum

Pediatric Nursing Services ("MPS"), reimburse DMAS for an overpayment of $63,972.15.  The

decision was based on a failure to maintain adequate documentation of criminal background checks.

MPS appealed to the Circuit Court for the City of Richmond, which affirmed the Department's

decision.  MPS then appealed to this Court.

On April 9, 2019, we issued an opinion affirming the circuit court in this case.  MPS

Healthcare, Inc. v. Dep't of Med. Assistance Servs., 70 Va. App. 140, 152, reh'g granted, 70

Va. App. 348 (2019).  In that opinion we held that the circuit court did not err in (1) affirming the

Department's FAD, which rejected the hearing officer's recommendation in favor of MPS concerning the criminal background checks at issue; (2) finding that MPS violated Code § 32.1-162.9:1(A) and 12 VAC 30-120-1730(A)(5); and (3) determining that an overpayment amount of $63,972.15 related to Error Code 913 should be returned to DMAS. Id.

Pursuant to Rule 5A:33(a), MPS submitted a request that we reconsider our holdings that Virginia law permits criminal background checks to be provided to DMAS for audit purposes and that the FAD properly rejected the hearing officer's decision. By order entered on May 7, 2019, we stayed our prior decision and granted MPS's petition for rehearing. Upon reconsideration of these matters, and for the reasons that follow, we find no reversible error and affirm the judgment of the circuit court.

## I. BACKGROUND

DMAS is the state agency authorized to administer the medical assistance program known as Medicaid, which is a federally and state funded program providing medical assistance to the eligible and medically indigent citizens of Virginia. The Social Security Act requires the state to establish a medical assistance plan setting forth state regulations governing Virginia's Medicaid program. 42 U.S.C. § 1396(a). DMAS is empowered to exercise administrative discretion and to issue rules, regulations, and policies on Department matters. 42 C.F.R. § 431.10(c)(1)(i) and (ii).

The Technology Assisted Waiver Program ("Tech Waiver") is a Medicaid program that provides services to persons dependent on a medical device, and therefore, requiring ongoing nursing care for the management of the device and for everyday activities.[1] Under such a waiver program, qualifying individuals are enabled "to remain in their homes or communities instead of

---

[1] As of July 1, 2017, the Technology Assisted Medicaid Waiver and the Elderly or Disabled with Consumer Direction Medicaid Waiver combined into one Medicaid Waiver and became the Commonwealth Coordinated Care (CCC) Plus Medicaid Waiver.

residing in a nursing home." 1st Stop Health Servs. v. Dep't of Med. Assistance Servs., 63 Va. App. 266, 270 (2014).

MPS is an enrolled provider of private duty nursing services under the Medicaid program. In the Provider Participation Agreement, MPS contracted "to provide services in accordance with the Provider Participation Standards published periodically by DMAS in the appropriate Provider Manual(s) . . . ." In the same agreement, MPS agreed to "keep such records as DMAS determines necessary" and "to comply with all applicable state and federal laws, as well as administrative policies and procedures of [DMAS] as from time to time amended." Pursuant to 12 VAC 30-120-1730(A)(5), providers are required to obtain criminal background checks performed by Virginia State Police on all employees who may have contact or provide services to the waiver individual.

DMAS regulations require that providers maintain sufficient records documenting fully and accurately the nature, scope, and details of the services provided. 12 VAC 30-120-930(A)(12). "To ensure accountability, the state conducts after-the-fact audits. In order for these audits to function efficiently, uniformity and clarity of documentation is essential." 1st Stop Health Servs., 63 Va. App. at 277.

Through its internal auditors, DMAS conducted a "desk audit" of MPS's services provided to twenty-five Medicaid recipients from October 1, 2014, through December 31, 2014.[2] On August 18, 2015, the auditors requested information on MPS staff who provided care, including criminal background checks performed by the Virginia State Police. On September 9, 2015, MPS responded with invoices and proof of payment to the Virginia State Police for all but

---

[2] During a "desk audit," the auditors make written requests to the Medicaid provider for documents that the auditors deem necessary for review.

- 3 -

four nurses. The invoices disclosed the names of the MPS employees, the month in which the request for a background check was made, and the dates of the completed searches.

Pat Kaufman, a DMAS Healthcare Compliance specialist, conducted the audit of MPS. On July 13, 2016, she wrote a file memorandum stating that criminal background checks were missing for several employees and a few supervisory employees for whom MPS had not submitted personnel files. On August 5, 2016, Kaufman sent a preliminary findings report to MPS advising it of the preliminary review and requested the submission of additional documentation regarding certain claims within thirty days of the receipt of the letter. An attached report and spreadsheet stated that certain criminal background check information was missing. The report indicated three error codes. Error Code 101 pertained to requirements for written documentation to support claims billed. Error Code 913 pertained to the requirement that a Medicaid provider perform criminal background checks and verify personal references of prospective employees. Under this error code, the auditors identified a lack of documentation for criminal record checks for three nurses. Error Code 915 pertained to the lack of personnel files, including criminal background checks, for staff.

Pamela Hubbard, the MPS Director of Nursing, testified that MPS did not receive the August 5, 2016 letter, and thus, MPS did not send the documentation within the thirty days. On September 20, 2016, DMAS allotted five additional days for MPS to submit the missing documentation.

On September 21, 2016, MPS sent additional documentation to DMAS excluding criminal background checks, stating that the criminal background checks were in the personnel files but could not be provided due to Virginia State Police dissemination policies. MPS stated that "[f]or each employee and registered nurse providing the supervisory visits for the recipients

in question we have submitted, paid for and received back the information from the Virginia police and are maintained in a file."

On November 14, 2016, Kaufman issued a notification and collection letter to MPS indicating that MPS was responsible for an overpayment of $74,894.25 for services rendered in the audited time frame. The letter indicated that no documentation was submitted showing the completion of a criminal background check for three nurses. Although personnel files were submitted for five registered nurses, the files did not contain a criminal background check, nor were their names noted in the invoices submitted on September 9, 2015. These deficiencies were identified under Error Code 913. Further, the letter stated that no personnel files were submitted for one licensed practical nurse (L.P.N.) and one R.N. These deficiencies were identified under Error Code 915.

MPS filed an appeal of DMAS's findings with the DMAS Appeals Division and requested an informal hearing. An informal appeal decision was issued on May 9, 2016, which upheld the overpayment determinations.[3] MPS again appealed and requested a formal hearing. On October 4, 2017, the hearing officer issued his recommended decision. He recommended reversing the retractions associated with Error Codes 913 and 915. DMAS and MPS both filed exceptions to the recommended decision. An FAD was filed on December 1, 2017. The FAD upheld the retractions associated with Error Code 913, but reversed the retractions associated with 915. As all administrative remedies had been exhausted, MPS appealed to the circuit court. On June 18, 2018, the circuit court affirmed the FAD and ordered that the overpayment amount

---

[3] MPS also submitted additional documentation to DMAS on December 12, 2016, during the informal appeal process. DMAS admitted at the informal hearing that this documentation would have satisfied the criminal background check requirements. MPS was not given credit for the submissions, however, because they were submitted post-audit.

of $63,972.15 related to Error Code 913 should be returned to DMAS. MPS appealed to this Court.

## II. STANDARD OF REVIEW

"Under the [Virginia Administrative Process Act ("VAPA")], the circuit court reviews an agency's action in a manner 'equivalent to an appellate court's role in an appeal from a trial court.'" Family Redirection Inst., Inc. v. Dep't of Med. Assistance Servs., 61 Va. App. 765, 771 (2013) (quoting Mattaponi Indian Tribe v. Commonwealth, 43 Va. App. 690, 707 (2004) (citations omitted)). "The circuit court has no authority under VAPA to reweigh the facts in the agency's evidentiary record." Id. "Instead, 'when the appellant challenges a judgment call on a topic on which the agency has been entrusted with wide discretion by the General Assembly, we will overturn the decision only if it can be fairly characterized as arbitrary or capricious and thus a clear abuse of delegated discretion.'" Id. at 772 (quoting Citland, Ltd. v. Commonwealth ex rel. Kilgore, 45 Va. App. 268, 275 (2005) (citation and quotation marks omitted)).

This Court "afford[s] DMAS 'great deference' in its administrative 'interpretation and application of its own regulations.'" Id. (quoting Finnerty v. Thornton Hall, Inc., 42 Va. App. 628, 634 n.2 (2004) (citation omitted)).

> "This deference stems from Code § 2.2-4027, which requires that reviewing courts 'take due account' of the 'experience and specialized competence of the agency' promulgating the regulation." [Bd. of Supervisors v. State Bldg. Code Tech. Review Bd., 52 Va. App. 460, 466 (2008)] (quoting Real Estate Bd. v. Clay, 9 Va. App. 152, 160-61 (1989)). However, "'deference is not abdication, and it requires us to accept only those principles of agency interpretations that are reasonable in light of the principles of construction courts normally employ.'" Id. (quoting EEOC v. Arabian American Oil Co., 499 U.S. 244, 260 (1991)).

Avante at Roanoke v. Finnerty, 56 Va. App. 190, 197 (2010); see also Appalachian Voices v. State Air Pollution Control Bd., 56 Va. App. 282, 293 n.2 (2010); Avalon Assisted Living Facilities, Inc. v. Zager, 39 Va. App. 484, 503 (2002).

Thus, this Court gives no deference to an agency's interpretation of its own regulation that is "arbitrary and capricious," meaning an interpretation that is "'unreasonable'" or "'without determining principle.'" Williams v. Commonwealth of Va. Real Estate Bd., 57 Va. App. 108, 135 (2010) (quoting Sch. Bd. of the City of Norfolk v. Wescott, 254 Va. 218, 224 (1997)).

### III. ANALYSIS

On appeal, MPS contends that the circuit court erred in affirming the DMAS Director's FAD. Specifically, MPS argues that the FAD arbitrarily and capriciously reversed the retractions associated with Error Code 913. Next, MPS contends that the circuit court erred in finding that MPS violated Code § 32.1-162.9:1(A) and 12 VAC 30-12-1730(A)(5). Lastly, MPS argues that the circuit court erred in determining that the overpayment amount of $63,972.15 associated with Error Code 913 should be remitted to DMAS. For the reasons that follow, we affirm the decision of the circuit court.[4]

MPS contends on appeal that the Error Code 913 retractions "arose as a result of the [a]uditor arbitrarily setting new and inconsistent standards not supported by Virginia law." Specifically, MPS refers to the auditor advising MPS that proof of criminal background check requirements could be met by simply a written statement saying that the criminal background

---

[4] MPS also maintains on appeal, as it did throughout the entire audit and agency appeals process, that pursuant to Code § 19.2-389, the criminal background check results for nurses who were part of the audit could not be released to DMAS. Although we do not reach this argument on appeal, we do note that Code § 19.2-389(A)(2) unquestionably permits MPS to obtain criminal background checks on potential employees as well as disseminate the results of such to DMAS. Code § 19.2-389(A)(2) states in pertinent part that

> Criminal history information shall be disseminated, whether directly or through an intermediary, only to . . . [s]uch other individuals and agencies that require criminal history record information to implement a state or federal statute . . . that expressly refers to criminal conduct and contains requirements or exclusions expressly based upon such conduct . . . .

checks were completed, then later requiring MPS to submit copies of invoices from the Virginia State Police or the actual criminal record checks.

The hearing officer ruled in MPS's favor concerning the Error Code 913 retractions, concluding that MPS acted appropriately based on Virginia law and the auditor's direction. Code § 2.2-4020(C) states that "[t]he agency shall give deference to findings by the presiding officer explicitly based on the demeanor of witnesses." However, Code § 32.1-325.1(B) states,

> The Director shall adopt the hearing officer's recommended decision unless to do so would be an error of law or Department policy. Any final agency case decision in which the Director rejects a hearing officer's recommended decision shall state with particularity the basis for rejection.

Here, the hearing officer ruled that 1st Stop Health Services did not apply to the facts of this case, stating that "1st Stop does not address when [required] documentation must be submitted in order to be considered in the appeals process." The hearing officer found that the required records existed, were in MPS's files, and "ultimately were submitted." In making his decision, he found that MPS justifiably relied on the auditor's advice as to acceptable documentation for criminal background checks. 1st Stop does, in fact, apply and controls the decision in this case.

In 1st Stop, as in this case, the applicable waiver manual was incorporated by reference into the Provider Participation Agreement, and explicitly permits the retraction of payments if the billed services do not meet regulatory requirements *at the time of the audit*. Technology Assisted Waiver and Private Duty Nursing Services Manual, Chapter VI, page 2 (2015); 12 VAC 30-120-1720(A)(4). Further, through the Provider Participation Agreement, MPS contracted to "keep such records as DMAS determines necessary," and "to comply with all applicable state and federal laws, as well as administrative policies and procedures of [DMAS] as from time to time amended."

The Tech Waiver Manual specifically states that, "[a]ny paid provider claim that cannot be verified *at the time of review* cannot be considered a valid claim for services provided, and is subject to retraction." Tech Waiver Manual, Chapter VI, page 4 (2015) (emphasis added). In addition, on November 12, 2015, DMAS issued a memo to all participating providers in response to our decision in 1st Stop, reaffirming the DMAS policy "that all provider documentation required to support claims for reimbursement must be maintained *prior to* and submitted by the provider *at the time of the audit*." The memo further advises that "[d]uring the audit and appeal processes, DMAS shall only consider documentation submitted by the provider during the course of the audit and prior to the deadline stated in the preliminary findings letter."

12 VAC 30-120-1720(A)(4) states that "[p]roviders shall be required to refund payments to DMAS if they . . . have failed to maintain records to support their claims for services." "The required documentation must be maintained prior to and at the time of the audit, not through reorganizing and explaining following a failed audit." 1st Stop Health Servs., 63 Va. App. at 280. To accept post-audit documentation "would ignore the plain terms of the Provider Agreement and the Manual, incentivize sloppy recordkeeping, and increase the cost and complexity of audits." Id. at 279. The documents submitted by MPS on December 16, 2016, during the informal appeal proceedings could not be considered even though they would have satisfied the regulatory requirements if submitted at the time of the audit. Therefore, the Director's FAD properly rejected the hearing officer's decision based on an error of law and policy. Code § 32.1-325.1(B).

## IV. CONCLUSION

For the above-stated reasons, we withdraw the prior opinion in this case and affirm the circuit court's decision to retract payments associated with Error Code 913. "[T]he regulations warn providers that 'noncompliance with DMAS policies and procedures may result in a

retraction of Medicaid payment or termination of the provider agreement, or both.'" 1st Stop Health Servs., 63 Va. App. at 272 (quoting 12 VAC 30-120-930(A)(17)).  As MPS failed to comply with policies and procedures concerning criminal background checks on employees, MPS shall reimburse DMAS the overpayment amount of $63,972.15.

Affirmed.

*VIRGINIA:*

PUBLISHED

*In the Court of Appeals of Virginia on* **Tuesday** *the* **7th** *day of* **May, 2019**.

MPS Healthcare, Inc., d/b/a
  Continuum Pediatric Nursing Services,                                 Appellant,

 against                Record No. 1125-18-2
                         Circuit Court No. CL18-262

Department of Medical Assistance Services and
  Commonwealth of Virginia,                                    Appellees.

Upon a Petition for Rehearing

Before Judges Humphreys, Petty and Chafin

On April 23, 2019 came the appellant, by counsel, and filed a petition praying that the Court set aside the judgment rendered herein on April 9, 2019, and grant a rehearing thereof.

On consideration whereof, the petition for rehearing is granted, the mandate entered herein on April 9, 2019 is stayed pending the decision of the Court, and the appeal is reinstated on the docket of this Court.

Pursuant to Rule 5A:35(a), the respondent may file an answering brief within 21 days of the date of entry of this order. An electronic version of the brief shall be filed with the Court and served on opposing counsel.[1] In addition, four printed copies of the answering brief shall be filed.

A Copy,
Teste:

Cynthia L. McCoy, Clerk

*original order signed by a deputy clerk of the*
By:   *Court of Appeals of Virginia at the direction*
      *of the Court*

Deputy Clerk

---

[1] The guidelines for filing electronic briefs can be found at www.courts.state.va.us/online/vaces/resources/guidelines.pdf.

COURT OF APPEALS OF VIRGINIA

Present:  Judges Humphreys, Petty and Chafin
Argued at Richmond, Virginia

MPS HEALTHCARE, INC., d/b/a
 CONTINUUM PEDIATRIC NURSING SERVICES

v.     Record No. 1125-18-2

DEPARTMENT OF MEDICAL ASSISTANCE
 SERVICES/COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE TERESA M. CHAFIN
APRIL 9, 2019

FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
Daniel T. Balfour, Judge Designate

Belinda Jones (Jonathan M. Joseph; Harrison M. Gates; Christian &
Barton, L.L.P., on briefs), for appellant.

Usha Koduru, Assistant Attorney General (Mark R. Herring,
Attorney General; Cynthia V. Bailey, Deputy Attorney General;
Kim F. Piner, Senior Assistant Attorney General, on brief), for
appellee.

The Director of the Department of Medical Assistance Services ("DMAS") issued a final

agency decision ("FAD") requiring that MPS Healthcare, Inc., doing business as Continuum

Pediatric Nursing Services ("MPS"), reimburse DMAS for an overpayment of $63,972.15.  The

decision was based on a failure to maintain adequate documentation of criminal background checks.

MPS appealed to the Circuit Court for the City of Richmond, which affirmed the Department's

decision.  MPS now appeals to this Court, assigning error to the circuit court in (1) affirming

DMAS's FAD, which rejected the hearing officer's recommendation in favor of MPS concerning

the criminal background checks; (2) finding that MPS violated Code § 32.1-162.9:1(A) and 12

VAC 30-120-1730(A)(5); and (3) determining that an overpayment amount of $63,972.15 related to

PUBLISHED

Error Code 913 should be returned to DMAS. For the reasons that follow, we affirm the decision of the circuit court.

## I. BACKGROUND

DMAS is the state agency authorized to administer the medical assistance program known as Medicaid, which is a federally and state funded program providing medical assistance to the eligible and medically indigent citizens of Virginia. The Social Security Act requires the state to establish a medical assistance plan setting forth state regulations governing Virginia's Medicaid program. 42 U.S.C. § 1396(a). DMAS is empowered to exercise administrative discretion and to issue rules, regulations, and policies on Department matters. 42 C.F.R. § 431.10(c)(1)(i) and (ii).

The Technology Assisted Waiver Program ("Tech Waiver") is a Medicaid program that provides services to persons dependent on a medical device, and therefore, requiring ongoing nursing care for the management of the device and for everyday activities.[1] Under such a waiver program, qualifying individuals are enabled "to remain in their homes or communities instead of residing in a nursing home." 1st Stop Health Servs. v. Dep't of Med. Assistance Servs., 63 Va. App. 266, 270 (2014).

MPS is an enrolled provider of private duty nursing services under the Medicaid program. In the Provider Participation Agreement, MPS contracted "to provide services in accordance with the Provider Participation Standards published periodically by DMAS in the appropriate Provider Manual(s) . . . ." In the same agreement, MPS agreed to "keep such records as DMAS determines necessary," and "to comply with all applicable state and federal laws, as well as administrative policies and procedures of [DMAS] as from time to time amended."

---

[1] As of July 1, 2017, the Technology Assisted Medicaid Waiver and the Elderly or Disabled with Consumer Direction Medicaid Waiver combined into one Medicaid Waiver and became the Commonwealth Coordinated Care (CCC) Plus Medicaid Waiver.

Pursuant to 12 VAC 30-120-1730(A)(5), providers are required to perform criminal background checks on all employees who may have contact or provide services to the waiver individual. These background checks must be performed by the Virginia State Police.

DMAS regulations require that providers maintain sufficient records documenting fully and accurately the nature, scope, and details of the services provided. 12 VAC 30-120-930(A)(12). "To ensure accountability, the state conducts after-the-fact audits. In order for these audits to function efficiently, uniformity and clarity of documentation is essential." 1st Stop Health Services, 63 Va. App. at 277.

Through its internal auditors, DMAS conducted a "desk audit" of MPS's services provided to twenty-five Medicaid recipients from October 1, 2014, through December 31, 2014.[2] On August 18, 2015, the auditors requested information on MPS staff who provided care, including criminal background checks performed by the Virginia State Police. On September 9, 2015, MPS responded with invoices and proof of payment to the Virginia State Police for all but four nurses. The invoices disclosed the names of the MPS employees, the month in which the request for a background check was made, and the dates of the completed searches.

Pat Kaufman, a DMAS Healthcare Compliance specialist, conducted the audit of MPS. On July 13, 2016, she wrote a file memorandum stating that criminal background checks were missing for a number of employees and a few supervisory employees for whom MPS had not submitted personnel files. On August 5, 2016, Kaufman sent a preliminary findings report to MPS advising it of the preliminary review and requested the submission of additional documentation regarding certain claims within thirty days of the receipt of the letter. An attached report and spreadsheet stated that certain criminal background check information was

_____

[2] In the course of a "desk audit," the auditors make written requests to the Medicaid provider for documents that the auditors deem necessary for review.

missing. The missing documentation indicated three error codes. Error Code 101 pertained to requirements for written documentation to support claims billed. Error Code 913 pertained to the requirement that a Medicaid provider perform criminal background checks and verify personal references of prospective employees. Under this error code, the auditors identified a lack of documentation for criminal record checks for three nurses. Error Code 915 pertained to the lack of personnel files, including criminal background checks, for staff.

Pamela Hubbard, the MPS Director of Nursing, testified that MPS did not receive the August 5, 2016 letter, and thus, MPS did not send the documentation within the thirty days. On September 20, 2016, DMAS allotted five additional days for MPS to submit the missing documentation.

On September 21, 2016, MPS sent additional documentation to DMAS excluding criminal background checks, stating that the criminal background checks were in the personnel files but could not be provided due to Virginia State Police dissemination policies. MPS stated that "[f]or each employee and registered nurse providing the supervisory visits for the recipients in question we have submitted, paid for and received back the information from the Virginia police and are maintained in a file."

On November 14, 2016, Kaufman issued a notification and collection letter to MPS indicating that MPS was responsible for an overpayment of $74,894.25 for services rendered in the audited time frame. The letter indicated that no documentation was submitted showing the completion of a criminal background check for three nurses. Although personnel files were submitted for five registered nurses, the files did not contain a criminal background check, nor were their names noted in the invoices submitted on September 9, 2015. These deficiencies were identified under Error Code 913. Further, the letter stated that no personnel files were submitted

for one licensed practical nurse (L.P.N.) and one R.N. These deficiencies were identified under Error Code 915.

MPS filed an appeal of DMAS's findings with the DMAS Appeals Division and requested an informal hearing. An informal appeal decision was issued on May 9, 2016, which upheld the overpayment determinations.[3] MPS again appealed and requested a formal hearing. On October 4, 2017, the hearing officer issued his recommended decision. He recommended reversing the retractions associated with Error Codes 913 and 915. DMAS and MPS both filed exceptions to the recommended decision. A FAD was filed on December 1, 2017. The FAD upheld the retractions associated with Error Code 913, but reversed the retractions associated with 915. As all administrative remedies had been exhausted, MPS appealed to the circuit court. On June 18, 2018, the circuit court affirmed the FAD and ordered that the overpayment amount of $63,972.15 related to Error Code 913 should be returned to DMAS. MPS now appeals to this Court.

## II. STANDARD OF REVIEW

"Under the [Virginia Administrative Process Act ("VAPA")], the circuit court reviews an agency's action in a manner 'equivalent to an appellate court's role in an appeal from a trial court.'" Family Redirection Inst., Inc. v. Dep't of Med. Assistance Servs., 61 Va. App. 765, 771 (2013) (quoting Mattaponi Indian Tribe v. Commonwealth, 43 Va. App. 690, 707 (2004) (citations omitted)). "The circuit court has no authority under VAPA to reweigh the facts in the agency's evidentiary record." Id. "Instead, 'when the appellant challenges a judgment call on a topic on which the agency has been entrusted with wide discretion by the General Assembly, we

---

[3] MPS also submitted additional documentation to DMAS on December 12, 2016, during the informal appeal process. DMAS admitted at the informal hearing that this documentation would have satisfied the criminal background check requirements. MPS was not given credit for the submissions, however, because they were submitted post-audit.

will overturn the decision only if it can be fairly characterized as arbitrary or capricious and thus a clear abuse of delegated discretion.'" Id. at 772 (quoting Citland, Ltd. v. Commonwealth ex rel. Kilgore, 45 Va. App. 268, 275 (2005) (citation and quotation marks omitted)).

This Court "afford[s] DMAS 'great deference' in its administrative 'interpretation and application of its own regulations.'" Id. (quoting Finnerty v. Thornton Hall, Inc., 42 Va. App. 628, 634 n.2 (2004) (citation omitted)).

> "This deference stems from Code § 2.2-4027, which requires that reviewing courts 'take due account' of the 'experience and specialized competence of the agency' promulgating the regulation." [Bd. of Supervisors v. State Bldg. Code Tech. Review Bd., 52 Va. App. 460, 466 (2008)] (quoting Real Estate Bd. v. Clay, 9 Va. App. 152, 160-61 (1989)). However, "'deference is not abdication, and it requires us to accept only those principles of agency interpretations that are reasonable in light of the principles of construction courts normally employ.'" Id. (quoting EEOC v. Arabian American Oil Co., 499 U.S. 244, 260 (1991)).

Avante at Roanoke v. Finnerty, 56 Va. App. 190, 197 (2010); see also Appalachian Voices v. State Air Pollution Control Bd., 56 Va. App. 282, 293 n.2 (2010); Avalon Assisted Living Facilities, Inc. v. Zager, 39 Va. App. 484, 503 (2002).

Thus, this Court gives no deference to an agency's interpretation of its own regulation that is "arbitrary and capricious," meaning an interpretation that is "'unreasonable'" or "'without determining principle.'" Williams v. Commonwealth of Va. Real Estate Bd., 57 Va. App. 108, 135 (2010) (quoting Sch. Bd. of the City of Norfolk v. Wescott, 254 Va. 218, 224 (1997)).

### III.  ANALYSIS

On appeal, MPS contends that the circuit court erred in affirming the DMAS Director's FAD.  Specifically, MPS argues that the FAD arbitrarily and capriciously reversed the retractions associated with Error Code 913.  Next, MPS contends that the circuit court erred in finding that MPS violated Code § 32.1-162.9:1(A) and 12 VAC 30-12-1730(A)(5).  Lastly, MPS argues that the circuit court erred in determining that the overpayment amount of $63,972.15

associated with Error Code 913 should be remitted to DMAS. For the reasons that follow, we affirm the decision of the circuit court.

### A. *The Hearing Officer's Recommendation*

MPS contends on appeal that the Error Code 913 retractions "arose as a result of the [a]uditor arbitrarily setting new and inconsistent standards not supported by Virginia law." Specifically, MPS refers to the auditor advising MPS that proof of criminal record check requirements could be met by simply a written statement saying that the criminal record checks were completed, then later requiring MPS to submit copies of invoices from the Virginia State Police or the actual criminal record checks.

The hearing officer ruled in MPS's favor concerning the Error Code 913 retractions, concluding that MPS acted appropriately based on Virginia law and the auditor's direction. Code § 2.2-4020(C) states that "[t]he agency shall give deference to findings by the presiding officer explicitly based on the demeanor of witnesses." However, Code § 32.1-325.1(B) states,

> The Director shall adopt the hearing officer's recommended decision unless to do so would be an error of law or Department policy. Any final agency case decision in which the Director rejects a hearing officer's recommended decision shall state with particularity the basis for rejection.

Here, the hearing officer ruled that 1st Stop Health Services did not apply to the facts of this case, stating that "1st Stop does not address when [required] documentation must be submitted in order to be considered in the appeals process." The hearing officer found that the required records existed, were in MPS's files, and "ultimately were submitted." In making his decision, he found that MPS justifiably relied on the auditor's advice as to acceptable documentation for criminal background checks. We find that the Director's FAD properly rejected the hearing officer's decision.

The Technology Assisted Waiver and Private Duty Nursing Services Manual ("Tech Waiver Manual") was incorporated by reference into the Provider Participation Agreement, in which MPS contracted to "keep such records as DMAS determines necessary," and "to comply with all applicable state and federal laws, as well as administrative policies and procedures of [DMAS] as from time to time amended." The Tech Waiver Manual specifically states that, "[a]ny paid provider claim that cannot be verified *at the time of review* cannot be considered a valid claim for services provided, and is subject to retraction." Tech Waiver Manual, Chapter VI, page 4 (2015) (emphasis added). 12 VAC 30-120-1720(A)(4) further states that "[p]roviders shall be required to refund payments to DMAS if they . . . have failed to maintain records to support their claims for services." "The required documentation must be maintained prior to and at the time of the audit, not through reorganizing and explaining following a failed audit." 1st Stop Health Services, 63 Va. App. at 280. To accept post-audit documentation "would ignore the plain terms of the Provider Agreement and the Manual, incentivize sloppy recordkeeping, and increase the cost and complexity of audits." Id. at 279. The documents submitted by MPS on December 16, 2016, during the informal appeal proceedings could not be considered even though they would have satisfied the regulatory requirements if submitted at the time of the audit. Therefore, the Director's FAD properly rejected the hearing officer's decision based on an error of law and policy. Code § 32.1-325.1(B).

### B. *Dissemination of Criminal Background Checks to DMAS*

MPS maintains on appeal, as it did throughout the entire audit and agency appeals process, that pursuant to Code § 19.2-389, the criminal background check results for nurses who were part of the audit could not be released to DMAS.[4] We find that when Code § 19.2-389 is

_____

[4] The DMAS auditor independently determined that invoices from the Virginia State Police proving payment for the criminal background checks would be acceptable documentation to satisfy the statutory and regulatory requirements. At other times, the DMAS auditor indicated

read in conjunction with Code § 32.1-162.9:1 and 12 VAC 30-120-1730(A)(5), it is evident that criminal background check results may, in fact, be provided to DMAS for audit purposes.

The rules of statutory construction dictate that closely related statutes must be read as being consistent with one another. See Zamani v. Commonwealth, 26 Va. App. 59, 63 (1997), aff'd, 256 Va. 391 (1998); see also Lillard v. Fairfax Cty. Airport Auth., 208 Va. 8, 13 (1967). Code § 32.1-162.9:1(A) provides that a "home care organization . . . shall, within 30 days of employment, obtain for any compensated employees an original criminal record clearance with respect to convictions for offenses specified in this section or an original criminal history record from the Central Criminal Records Exchange." Code § 32.1-162.9:1(A) also notably states that "[f]urther dissemination of the information provided pursuant to th[e] section is prohibited *other than to a federal or state authority* or court as may be required to comply with an express requirement of law for such further dissemination." (Emphasis added).

12 VAC 30-120-1730(A)(5) states that providers must

> [p]erform a criminal background check on all employees, including the business owner, who may have any contact or provide services to the waiver individual. Such record checks shall be performed by the Virginia State Police for the Commonwealth. When the Medicaid individual is a minor child, searches shall also be made of the Virginia CPS Central Registry.
>
> a. Provider documentation of the results of these searches must be made available upon request of DMAS or its authorized representatives. Persons convicted of having committed barrier crimes as defined in § 32.1-162.9:1 of the Code of Virginia shall not render services to waiver individuals for the purposes of seeking Medicaid reimbursement.
>
> b. Persons having founded dispositions in the CPS Central Registry at DSS shall not be permitted to render services to children in this waiver and seek Medicaid reimbursement.

---

that a letter stating that the checks had been performed would suffice to meet the requirement. The fact that the auditor gave erroneous and inconsistent advice upon which MPS relied does not prevent the government from enforcing its laws. See Sink v. Commonwealth, 13 Va. App. 544 (1992). See also Heckler v. Community Health Services, 467 U.S. 51 (1984).

Medicaid reimbursement shall not be made for providers' employees who have findings with the Virginia Board of Nursing of the Department of Health Professions concerning abuse, neglect, or mistreatment of individuals or misappropriation of the property.

Therefore, under the applicable regulation and statute, MPS was clearly required to procure background checks for its employees within thirty days of hiring and document the criminal record checks performed in compliance with Code § 32.1-162.9:1. MPS was also required to provide such documentation to DMAS on request.

During the course of the audit, DMAS and MPS viewed Code § 32.1-162.9:1 and 12 VAC 30-120-1730(A)(5) in light of Code § 19.2-389, which limits the dissemination of criminal background check results. Both parties erroneously interpreted the statutes to mean that although MPS was required to complete background checks on all employees, the results of such checks could not then be disseminated to DMAS for audit purposes.

Code § 19.2-389 states in pertinent part:

A. Criminal history record information shall be disseminated, whether directly or through an intermediary, only to:

. . . .

7. Agencies of any political subdivision of the Commonwealth, . . . for the conduct of investigations of applicants for employment, permit, or license whenever, in the interest of public welfare or safety, it is necessary to determine under a duly enacted ordinance if the past criminal conduct of a person with a conviction record would be compatible with the nature of the employment, permit, or license under consideration . . . .

When all three statutes are read together, it is clear that the legislature intended agencies to be given access to the results of criminal background check results for employment purposes. It reasons then that in order to ensure that Medicaid providers are complying with regulatory and statutory requirements of performing criminal background checks on all employees, the DMAS auditors should be given access to the results of the checks.

- 10 -

## IV.  CONCLUSION

For the above-stated reasons, we affirm the circuit court's decision to retract payments associated with Error Code 913.  "[T]he regulations warn providers that 'noncompliance with DMAS policies and procedures may result in a retraction of Medicaid payment or termination of the provider agreement, or both.'"  1st Stop, 63 Va. App. at 272 (quoting 12 VAC 30-120-930(A)(17)).  As MPS failed to comply with policies and procedures concerning criminal background checks on employees, MPS shall reimburse DMAS the overpayment amount of $63,972.15.

Affirmed.