COURT OF APPEALS OF VIRGINIA

Present: Judges O'Brien, Causey and Frucci

IDA SMITH

v.        Record No. 1685-24-1

VIRGINIA DEPARTMENT OF MEDICAL
 ASSISTANCE SERVICES

MEMORANDUM OPINION*
PER CURIAM
NOVEMBER 5, 2025

FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
David J. Whitted, Judge

(Nicole Mckenzie; sb2 inc., on briefs), for appellant.  Appellant
submitting on briefs.

(Jason S. Miyares, Attorney General; Steven G. Popps, Chief Deputy
Attorney General; Rob B. Bell, Deputy Attorney General; Kim F.
Piner, Senior Assistant Attorney General/Section Chief; Elizabeth M.
Guggenheim, Senior Assistant Attorney General, on brief), for
appellee.


Ida Smith appeals the circuit court's order affirming the Virginia Department of Medical

Assistance Services' (DMAS's) denial of her claim for Medicaid Long Term Services and

Support (LTSS).  DMAS sustained the Chesapeake Department of Social Services' (the

Department's) action, which found Smith ineligible to receive LTSS due to excess resources

from March 1, 2020, to August 31, 2020.  Smith argues the circuit court erred because one of the

resources was unavailable, she did not get proper notice in 2020, her son, having power of attorney,

could not act before knowing the excess resources, one of her resources should have been excluded,

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

and the Department's actions violated the Americans with Disabilities Act (ADA). Appellant waives oral argument.[1]

## BACKGROUND[2]

Smith is an "institutionalized individual,"[3] living in a skilled-nursing facility. She granted her son a power of attorney, and the nursing facility is her authorized agent. Smith[4] applied to the Department to renew[5] her LTSS in September 2019. *See* 12 VAC 30-60-302 (explaining LTSS). In February 2020, the Department denied Smith's application due to excess income and resources. Smith appealed. After a hearing, DMAS remanded the matter to the Department to determine Smith's resource eligibility as of March 1, 2020.

The Department discovered a new checking account that Smith had not included on her application. A review of the account—in which she received her pension payments—revealed a life insurance policy through Bankers Life as of July 2019; her son had power of attorney over that account. The cash surrender value of the policy as of March 17, 2020, was $3,908. On August 28, 2020, Smith's son requested a $2,300 withdrawal from the policy, which was processed by

---

[1] Having examined the briefs and record in this case, the panel unanimously agrees that oral argument is unnecessary because "the appeal is wholly without merit." *See* Code § 17.1-403(ii)(a); Rule 5A:27(a).

[2] On appeal, "[w]e view the evidence in the light most favorable to [DMAS]." *Chabolla v. Va. Dep't of Soc. Servs.*, 55 Va. App. 531, 534 (2010) (first alteration in original) (quoting *Mulvey v. Jones*, 41 Va. App. 600, 602 (2003)). Furthermore, we "limit our review of issues of fact to the agency record." *Mulvey*, 41 Va. App. at 602.

[3] "'Institutionalized individual' means an individual residing in a long-term care institution or covered under a home and community-based waiver for 30 consecutive days." 12 VAC 30-110-1020.

[4] Smith's nursing facility submitted the application and later appealed the decision on her behalf.

[5] Smith had received LTSS since October 1, 2015.

September 8, 2020.  Smith had another life insurance policy through Colonial Penn, which had a cash surrender value of $1,598 on March 1, 2020.

After determining that the cash values of Smith's life insurance policies alone exceeded the LTSS resource limit of $2,000, the Department again denied her LTSS request in January 2022.[6] The Department found Smith ineligible for benefits for the time from March 1, 2020, until August 31, 2020.  She became eligible for LTSS on September 1, 2020, after the withdrawal of funds from the Bankers Life policy.  Smith appealed the 2022 denial of her benefits from March to August 2020 to DMAS.

At the DMAS hearing, Smith's son testified that he would have resolved the issue earlier had he known what resources were over the limit.  He stated that the 2020 denial notice did not specify the excess resources, he did not know the life insurance policy existed, and his mother could not help him because of her stroke.  And despite his diligent efforts to ascertain the information, his ignorance, along with the COVID-19 pandemic, prevented him from remedying the ineligibility sooner.  Smith argued that, accordingly, the resources were unavailable and unknown, so they should not have counted towards her eligibility.

In June 2022, DMAS sustained the LTSS denial based on the Bankers Life policy; it did not address the Colonial Penn policy.  DMAS determined that Smith owned the Bankers Life policy, that she had the right, authority, or power to convert it to cash, and that she was not legally restricted from using the resource for her support and maintenance.  DMAS concluded that even though Smith could not communicate her ownership interests to her son, she was aware of the checking account that received her pension and paid the Bankers Life policy premium.  Further, the account identified her son's power of attorney.  Accordingly, Smith and her son were aware of her resources

---

[6] The Department and DMAS reviewed Smith's other assets, which are not subject to this appeal.

that exceeded the applicable resource limit. DMAS had no duty to inform Smith's son about a resource Smith owned. DMAS therefore determined that the Bankers Life policy was a resource that exceeded the LTSS $2,000 limit from March 1, 2020, until the August 2020 withdrawal.

Smith appealed to the circuit court for judicial review of DMAS's denial. She argued that the life insurance policies should not have counted as a resource because they were unavailable, that she was unable to access the life insurance accounts, and that her son did not know which of her assets were the excess resources until after February 2020. Additionally, Smith contended that the Department failed to provide her a reasonable accommodation under the ADA. The court affirmed DMAS's decision, finding that Smith was aware of the resources and ruling that she had waived the ADA issue because she did not argue that claim to the agency. Smith appeals.

ANALYSIS

"The Virginia Administrative Process Act ('VAPA') authorizes judicial review of agency decisions." *LifeCare Med. Transps., Inc. v. Va. Dep't of Med. Assistance Servs.*, 63 Va. App. 538, 548 (2014) (citing Code § 2.2-4026). Under VAPA, Smith has the burden "to designate and demonstrate an error of law subject to review by the court." Code § 2.2-4027. "[T]he reviewing court may examine the agency decision for '(i) accordance with constitutional right,' '(ii) compliance with statutory authority,' '(iii) observance of required procedures where any failure therein is not mere harmless error, and (iv) the substantiality of the evidentiary support for findings of fact.'" *Va. Bd. of Med. v. Hagmann*, 67 Va. App. 488, 499 (2017) (quoting Code § 2.2-4027). "[S]ubstantial evidence" is "such relevant evidence as a reasonable mind *might* accept as adequate to support a conclusion." *Va. Real Est. Comm'n v. Bias*, 226 Va. 264, 269 (1983) (quoting *Consol. Edison Co.* v. *NLRB*, 305 U.S. 197, 229 (1938)). "In applying the substantial evidence standard, the reviewing court is required to take into account 'the presumption of official regularity, the experience and specialized competence of the agency, and the purposes of the basic law under

- 4 -

which the agency has acted.'" *All. to Save the Mattaponi v. Va. Dep't of Env't Quality ex rel. State Water Control Bd.*, 270 Va. 423, 442 (2005) (quoting Code § 2.2-4027).

Moreover, this Court "afford[s] DMAS 'great deference' in its administrative 'interpretation and application of its own regulations.'" *MPS Healthcare, Inc. v. Dep't of Med. Assistance Servs./Commonwealth*, 70 Va. App. 624, 630 (2019) (alteration in original) (quoting *Fam. Redirection Inst., Inc. v. Dep't of Med. Assistance Servs.*, 61 Va. App. 765, 772 (2013)). "If the decision under review involves an interpretation within the specialized knowledge of the agency and if the General Assembly has vested the agency with broad discretion to interpret and apply the relevant regulations," we reverse "only for arbitrary or capricious action that constitutes a clear abuse of the agency's delegated discretion." *Frederick Cnty. Bus. Park, LLC v. Va. Dep't of Env't Quality*, 278 Va. 207, 211 (2009).

Smith asserts five arguments on appeal: she alleges that (1) her assets were unavailable to her when the Department denied her LTSS benefits; (2) the 2020 denial notice was defective; (3) a person with power of attorney cannot act without knowing the resource in excess; (4) the Colonial Penn policy should have been excluded as a burial expense; and (5) the Department's actions violated the ADA. For the following reasons, we conclude that the circuit court did not err in finding her insurance policy resource available and that the other arguments are waived.

I. Unavailable Resource

DMAS is the state agency that administers Medicaid, a program that provides medical assistance to eligible indigent individuals. *MPS Healthcare, Inc.*, 70 Va. App. at 627. Financial eligibility criteria determine whether a person is medically indigent and qualified to receive medical care without charge. 12 VAC 5-200-30(i). A person applying for LTSS must be below a $2,000 resource limit. 12 VAC 30-40-230; Virginia Medicaid Manual M1460.500(B). Virginia defines resources as "cash and any other personal or real property that an individual . . . owns;

has the right, authority, or power to convert to cash (if not already cash); and is not legally restricted from using for his/her support and maintenance." Manual S1110.100(B)(1). An individual's life insurance policy with a cash surrender value is a specifically enumerated resource. Manual M1130.300(A)(3) & (B)(1); *but see* Manual M1130.300(B)(2) (creating limited exclusions for polices with a face value less than $1,500 and for individuals under 21 years old).

The Virginia Medicaid Manual specifically addresses unknown assets. "An individual may be unaware of his or her ownership of an asset. If this is the case, the asset is not a resource during the period in which the individual was unaware of his/her ownership." Manual S1110.117(A). The Manual provides two examples: an unknown inheritance and an unknown gift. Manual S1110.117(C). In both instances, the recipient had no knowledge of the asset until discovery. Manual S1110.117(C).

Smith does not dispute that the Bankers Life policy was over the $2,000 resource limit for LTSS. *See* 12 VAC 30-40-230; Manual M1460.500(B). But Smith asserts that she could not access the policy due to her stroke and her son was unaware of the specific resource that disqualified her for LTSS. She argues that the Bankers Life policy was unavailable to her because she and her son were unable to promptly address the excess resource.

Although Smith could not communicate her financial circumstances, the undisputed evidence showed Smith owned the checking account from which the Bankers Life policy premiums were paid. Smith's son had access to her bank account as her power of attorney and could have reviewed her bank statements. In August 2020, Smith's son made a withdrawal from the policy and deposited the funds into her bank account. Thus, substantial evidence supported DMAS's factual findings.

Interpreting and applying its own regulations, DMAS concluded the policy was a countable resource. Smith owned the policy; she had the right, authority or power to convert the Bankers Life policy to cash; and she was not legally restricted from using the resource for her support and maintenance. Moreover, because Smith's son was listed as the power of attorney on the checking account, he was "aware" of the Bankers Life policy. As a result, DMAS determined that the Bankers Life policy was an excess resource, making Smith ineligible for LTSS between March 1 and August 31, 2020. This reasoned decision is not arbitrary or capricious; therefore, the circuit court did not err in affirming DMAS's decision.[7] *Frederick Cnty. Bus. Park, LLC*, 278 Va. at 211.

## II. Procedural Default

"Principles of procedural default, analogous to those governed by Rule 5A:18, apply to agency decisions judicially challenged on appeal." *New Age Care, LLC v. Juran*, 71 Va. App. 407, 430 (2020) (quoting *French v. Va. Marine Res. Comm'n*, 64 Va. App. 226, 232 n.2 (2015)). "An appellant 'may not raise issues on appeal from an administrative agency to the circuit court that it did not submit to the agency for the agency's consideration.'" *Id.* (quoting *Pence Holdings, Inc. v. Auto Ctr., Inc.*, 19 Va. App. 703, 707 (1995)). Any argument presented for the first time to a circuit court is "not preserved for appeal, and is thus procedurally defaulted." *Doe v. Va. Bd. of Dentistry*, 52 Va. App. 166, 176 (2008) (en banc). Additionally, Rule 2A:4(b) provides that a petition for appeal "must . . . specify the errors assigned [and] state the reasons why the regulation or case decision is deemed to be unlawful." *See, e.g.*, *Boone v. Harrison*, 52 Va. App. 53, 63-64 (2008)

---

[7] Smith makes the same argument for the Colonial Penn policy. But DMAS did not determine the status of that policy because the Bankers Life policy alone exceeded the applicable resource limit. By affirming the court's ruling on the Bankers Life policy, we need not address the Colonial Penn policy. *Marlowe v. Sw. Va. Reg'l Jail Auth.*, 81 Va. App. 415, 424 n.5 (2024) (applying the doctrine of judicial restraint to decide the case on the best and narrowest grounds available).

(explaining Rule 2A:4(b)'s requirement that the petition "specify the errors" and precluding arguments not raised). "Generally, rules governing appeal procedures are mandatory and 'compliance with them is necessary for the orderly, fair and expeditious administration of justice.'" *Mayo v. Dep't of Com.*, 4 Va. App. 520, 522 (1987) (quoting *Condrey v. Childress*, 203 Va. 755, 757 (1962)).

In addition to the argument discussed above, Smith also contends that (1) the 2020 denial notice was defective; (2) a person with power of attorney cannot act without knowing the resource in excess; (3) the Colonial Penn life insurance policy was an excluded asset because it was a burial expense; and (4) the Department violated the ADA. Yet Smith did not make these arguments to DMAS nor did DMAS consider them; we may only review decisions on arguments presented to the agency. Rule 2A:4(b); *Juran*, 71 Va. App. at 430. Besides the ADA argument, Smith also did not make these arguments in her petition to the circuit court. Accordingly, Smith's remaining arguments are waived. *Doe*, 52 Va. App. at 176.

## CONCLUSION

For the foregoing reasons, the circuit court's judgment is affirmed.

*Affirmed.*