Matthew E. STEGER, III, Petitioner,

v.

DEFENSE INVESTIGATIVE SERVICE
DEPARTMENT OF DEFENSE,
Respondent.

No. 82–1226.

United States Court of Appeals,
District of Columbia Circuit.

Argued Nov. 2, 1982.
Decided Sept. 13, 1983.

Norman L. Blumenfeld, Washington, D.C., for petitioner. Matthew E. Steger, III, pro se, was on the brief, for petitioner.

Regina C. McGranery, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Royce C. Lamberth, R. Craig Lawrence and Michael J. Ryan, Asst. U.S. Attys., Washington, D.C., were on the brief, for respondent.

Before ROBINSON, Chief Judge, and MIKVA and SCALIA, Circuit Judges.

Opinion PER CURIAM.

Dissenting opinion filed by Circuit Judge SCALIA.

PER CURIAM:

Petitioner, Matthew Steger, seeks review of a decision of the Merit Systems Protection Board (MSPB or Board) denying him attorneys' fees which Steger incurred in successfully challenging his discharge from employment from the Defense Investigative Service (DIS). Specifically, Steger argues that the Board's decision cannot be squared with two factors that the Board has identified elsewhere as warranting an award of attorney's fees: first, that the agency's discharge was clearly without merit; and second, that the discharging agency knew or should have known that it would not prevail on the merits. Because we agree that, in light of MSPB precedent, the Board's decision as to Steger is arbitrary and capricious, we reverse the MSPB's denial of attorneys' fees and remand to the Board for further consideration of all the relevant factors and a determination of the appropriate fee award, if any, due petitioner.

### BACKGROUND

Steger is an investigator with the DIS and also the owner of an automobile parts store which he manages after hours and on weekends. On December 14, 1979, the DIS issued Steger a Notice of Proposed Removal, advising him of three charges of misconduct: (1) unauthorized use of a government-owned vehicle, (2) unauthorized absence, and (3) submission of false information on official documents. The first two charges stemmed from the sworn statements of two couples, the Davises and the Thorntons, who claimed to have seen Steger repeatedly drive his government vehicle to his store or to his home during regular working hours. The third charge stemmed from an agency audit of Steger's office records and alleged that Steger had overstated the amount of time that he worked on his government investigations.

Steger, through his attorney, filed a written reply to the Notice of Proposed Removal and requested a hearing. Pursuant to this request, Steger and his attorney held an oral conference with the regional director of Steger's office. At this conference, Steger presented the written, signed statements of eleven individuals stating that Steger had neither misused his government car nor gone to his home or business during working hours and casting doubt on the motives and credibility of the two couples who had indicated otherwise. See Petitioner's Appendix (PA) 86–98. Because permission of these eleven individuals had not been obtained, however, Steger did not formally submit the statements into the record or allow them to be copied. Instead, he permitted the regional director to study the statements and to take notes on them, and urged the director to contact the eleven individuals for further corroboration. The director, however, made no further investigation. Rather, he forwarded to the DIS' "deciding official" a conference report which alluded to the eleven statements and which, in an accompanying memorandum, summarized their content. PA 7–12, 13. In this conference report, the regional director stated that he found no reason to disbelieve the validity of the charges against Steger and therefore recommended Steger's removal. The DIS' deciding official accepted the director's recommendation, made no independent inquiry into the eleven exonerating statements, and ordered Steger's discharge.

On April 23, 1980, Steger appealed his discharge to the MSPB. After a hearing at which the eleven signed statements were submitted for the record, and at which oral testimony supporting Steger was heard, a MSPB presiding official reversed Steger's removal. The presiding official concluded that the charges based on the affidavits of the Davises and Thorntons were contradicted by the overwhelming weight of Steger's eleven signed statements and corroborating oral testimony. Presiding Official's Decision, reprinted in PA 26, 29. The third charge, falsifying government records, was found to be unsupported by a preponderance of the evidence. Id. at 30. The agency did not appeal the presiding official's decision which, in September 1980, became the final decision of the MSPB.

Following his administrative victory, Steger applied to the Board for attorneys' fees. His application specified the $8,084.00 in total fees and expenses he had incurred in recovering his job and stated that:

> Payment is warranted in the interest of justice. The agency did not support its removal action with competent evidence. Its investigation was incomplete and insufficient to justify the adverse action it took. The agency's attempt to terminate the appellant was improper, and its case clearly lacked merit.

PA 34. In January 1981, the same presiding official who had reversed Steger's removal denied his motion for attorneys' fees. Addendum Decision, *reprinted in* PA 37–39. Steger appealed this decision to the full Board which, in January 1982, upheld its presiding official. Essentially, the Board found attorneys' fees properly denied in this case because Steger had not submitted the eleven signed exculpatory statements into the DIS' administrative record: "Because the signed statements did not become a part of the agency's record and the agency deciding official did not have an opportunity to review them, appropriate officials within the agency had no reason to believe that the agency would not prevail." PA 47. This petition for judicial review followed.

### Discussion

■ The Civil Service Reform Act of 1978 (the Act) provides the MSPB with statutory authority to award attorneys' fees to employees who successfully challenge adverse personnel actions:

> [T]he Board ... may require payment by the agency involved of reasonable attorney fees incurred by an employee or applicant for employment if the employee or applicant is the prevailing party and the Board ... determines that payment by the agency is warranted in the interest of justice, including any case in which a prohibited personnel practice was engaged in by the agency or any case in which the agency's action was clearly without merit.

5 U.S.C. § 7701(g)(1) (Supp. V 1981). *See also* 5 C.F.R. § 1201.37(a) (1982) (employing same language). As this statutory grant indicates, the Board enjoys considerable discretion in deciding when an award of attorneys' fees "is warranted in the interest of justice." The MSPB's discretion is not, however, absolute. The applicable standard of judicial review requires this court to set aside the Board's attorneys' fees decisions that are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. *See* 5 U.S.C. § 7703(c)(1) (Supp. V 1981). Although the nature of our review is admittedly narrow, we must *inter alia* satisfy ourselves that the Board, in reaching its decision, has considered the "relevant factors." *See Motor Vehicle Manufacturers Association of the United States v. State Farm Mutual Automobile Insurance Co.,* —— U.S. ——, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983); *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971).

■ The factors relevant to the Board's determination of attorney's fees were established by the MSPB itself in *Allen v. Postal Service,* 2 MSPB 582 (1980). In *Allen,* the Board identified several circumstances that may warrant attorneys' fees under the "interest of justice" standard:

1. Where the agency engaged in a "prohibited personnel practice";

2. Where the agency's action was "clearly without merit," or was "wholly unfounded," or the employee is "substantially innocent" of the charges brought by the agency;

3. Where the agency initiated the action against the employee in "bad faith," including:

 a. Where the agency's action was brought to "harrass" the employee;

 b. Where the agency's action was brought to "exert improper pressure on the employee to act in certain ways."

4. Where the agency committed a "gross procedural error" which "prolonged the proceeding" or "severely prejudiced" the employee;

5. Where the agency "knew or should have known that it would not prevail on the merits" when it brought the proceeding.

2 MSPB at 593 (citations and footnotes omitted). Given this interpretation of the Act, we reject at the outset the suggestion by DIS that the Board may only award attorneys' fees if a claimant proves "bad faith or some comparable motive prompting the agency action." Respondent's Brief at 12. Such a position is wholly at odds with the well-supported conclusion reached by the Board in *Allen* that the "warranted in the interest of justice" standard, as enacted in the final version of the Act, was "intended to be broader than that provided [in an earlier Senate bill] which would have limited awards to cases involving agency bad faith." 2 MSPB at 591 (citing Transcript of House-Senate Committee's Mark-up Session on S. 2640, 95th Cong., 2d Sess. 50–51 (Sept. 27, 1978) and 11, 30 (Sept. 28, 1978)). *See Erdman v. Department of Labor,* 6 MSPB 54, 55 (1981) ("Contrary to the agency's contention, there does not have to be a finding of bad faith and ill will in order to grant fees. Bad faith is only one of the circumstances to be considered in awarding fees"). Indeed, in the present case, the Board's presiding official found that the circumstances listed in *Allen* as items 1, 3, and 4 (including the "bad faith" situation) were not even factually relevant elements of Steger's case. Addendum to Decision No. DC07528010017 (Addendum Decision), *reprinted in* PA 38. Instead, both the presiding official and the full Board found that Steger's case implicated only items 2 and 5: whether DIS' action against Steger was "clearly without merit" and whether DIS "knew or should have known that it would not prevail on the merits" when it sought to terminate Steger's employment. *Id.* at 2, *reprinted in* PA 38; MSPB Opinion and Order, DC07528010017 (Final Decision), *reprinted in* JA 46. We turn now to the MSPB's treatment of these two relevant factors.

■ We begin the analysis by noting that the factors deemed relevant by the Board involve two relatively distinct situations.

First, there is the situation where an agency's adverse action against an employee is virtually groundless. In making this determination, the Board examines "the degree of fault on the employee's part and the existence of any reasonable basis for the agency's action." *Allen,* 2 MSPB at 593 n. 35. Generally speaking, this inquiry is categorized under *Allen* factor 2 (agency action that is "clearly without merit," "wholly unfounded," or taken against an employee who is "substantially innocent" of the charges), although it may also be appropriate in part to factor 5 (where an agency knows "that it would not prevail on the merits"). Second, there is the state of affairs identified in the remaining part of factor 5, where an agency takes action against an employee even though it "*should have known* that it would not prevail on the merits." *Id.* at 593 (emphasis added). The relevant determination here focuses in large measure on an agency's failure to investigate exonerating facts brought to its attention by the affected employee. As the Board has stated, attorneys' fees may be warranted when an agency fails to make such reasonable inquiry and "obdurately presse[s] on with the charges ...." *O'Donnell v. Department of Interior,* 2 MSPB 604, 609 (1980); *accord Cicero v. Postal Service,* 4 MSPB 145 (1980); *Stout v. Postal Service,* 3 MSPB 440 (1980).

In the present case, the Board considered the first of these factors and concluded that, because Steger failed to submit his eleven exonerating statements into the record, the DIS had at least a colorable reason for pursuing its charges against him. Specifically, the Board found that "appropriate officials within the agency had no reason to believe that the agency would not prevail" given that the agency decisionmaker had before him actual, sworn statements supporting the charges and only the regional director's hearsay summary of the eleven counter-statements, denying them. *See* Final Decision, PA 47; Addendum Decision, PA 39. We do not take issue with the Board's judgment, as far as it goes. But the Board's explanation for denying fees in

this case clearly does not complete its required task—it nowhere discusses or even acknowledges the agency's separate obligation to make reasonable inquiries into the exonerating facts which Steger brought to its attention. This is especially troubling in light of MSPB decisions holding, on factual patterns remarkably similar to those presented here, that attorneys' fees are warranted because an agency "should have known" that it would not prevail on the merits.

In *O'Donnell v. Department of Interior*, 2 MSPB 604 (1980), the Board awarded attorneys' fees to a private in the United States Park Police who had successfully contested his removal. In that case, the Park Service, relying on the expert diagnoses of the Board of Police and Fire Surgeons and several physicians of the Public Health Service, notified O'Donnell of its decision to terminate his employment for absence from duty due to a work-related knee injury and for his failure to submit to recommended corrective surgery. Although O'Donnell, in his written reply to these charges, referred to a recent arthroscopy indicating that the Park Service's experts had misdiagnosed his condition, the Park Service failed to investigate the arthroscopy's results and terminated O'Donnell's employment. Later, after O'Donnell had successfully challenged his removal on the merits, the Board awarded him attorneys' fees because "if the agency had properly inquired into the facts presented by appellants' written reply to the charges, the agency would have—and certainly should have—ascertained at the outset that the central charge against appellant was without merit." 2 MSPB at 608. We find Steger's position analogous to that presented in *O'Donnell;* in particular, we note that the agency in *O'Donnell* was found to have failed in its duty of proper inquiry even though O'Donnell had apparently only "referred" to certain exonerating evidence in his written reply to the agency. *See* 2 MSPB at 605 n. 2. Given the Board's decision in *O'Donnell,* it is difficult to see why, in the present case, the regional director's written reference to the existence of the eleven exonerating statements did not serve to trigger the agency's duty to investigate to the same extent that the Board found *O'Donnell's* reference to the arthroscopy to have done. Indeed, we find the Board's rationale in this case—focusing on Steger's failure to provide the agency with copies of the eleven statements—to be fairly inexplicable in light of other decisions of the Board as well. In *Batchelder v. Department of Treasury,* Docket No. BN07528010070ADD (Nov. 22, 1982), for example, the Board suggested that an agency's duty of prudent inquiry could be triggered by providing it with facts in an *oral reply* that would prompt it to inquire further into the merits of the charge. *Id.,* slip op. at 4. Similarly, in *Stout v. Postal Service,* 3 MSPB 440 (1980), the Board held that an agency's deciding official should have known that he could not succeed against an employee had he "properly considered the [employee's] response and *investigated any questions it provoked in his mind.*" *Id.* at 441–42 (emphasis added).

 Given that the DIS' deciding official in the present case was provided with clear, written indication that evidence exonerating Steger existed, his failure to inquire into this evidence is difficult to square with the Board's decisions in *O'Donnell, Batchelder,* and *Stout. See also Cicero v. Postal Service,* 4 MSPB 145 (1980) (attorneys' fees awarded when agency disregarded credible evidence of employee's presence at work where employee had been charged with not being at work). And, as this court had indicated before, an agency is under an obligation to follow, distinguish, or overrule its own precedent. *See, e.g., Local 777, Democratic Union Organizing Comm. v. NLRB,* 603 F.2d 862, 872 (D.C.Cir.1978). The Board cannot, despite its considerable discretion, treat similar situations dissimilarly and, indeed, can be said to be at its most arbitrary when it does so. *See Etelson v. OPM,* 684 F.2d 918, 926–27 (D.C.Cir. 1982). When the Board not only fails to distinguish its precedent, but wholly fails to even consider it, the agency's arbitrariness is compounded. Such is the case here. The Board never once discussed any of its cases

describing an agency's duty of inquiry, even though it expressly identified *Allen's* "should have known" factor as a particularly relevant consideration in the present case. Nor did the Board suggest that the DIS properly proceeded against Steger solely on the questionable strength of the third charge (filing misleading investigative reports). Thus, the Board's failure to. consider the "should have known" factor, as to the two main charges leveled against Steger, forces us to reject its decision in this case as arbitrary and capricious.

CONCLUSION

Since its . seminal opinion in *Allen,* the Board has determined that attorneys' fees may be warranted when an agency blindly continues with an adverse personnel action despite the presentation of exonerating facts by the employee—facts which, had the agency only inquired into them, would have spared the employee the considerable expense of hiring an attorney. In the present case, the Board's unexplained failure to apply an agency's duty of prudent inquiry to the DIS forces us to reverse the Board's decision as arbitrary and capricious and to remand to the Board for further consideration of whether, in light of this relevant factor, a fee award is due Steger and, if so, in what amount.

*It is so ordered.*

SCALIA, Circuit Judge, dissenting:

I dissent because I believe the majority has applied a microscope to an inquiry which Congress meant to be conducted with the naked eye. We are authorized to set aside this agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 7703(c)(1) (Supp.V 1981). Every branch of that test requires, either expressly or implicitly, that we take into account the degree of discretion Congress intended the agency to enjoy with regard to the determination at issue. Thus, even an agency decision arrived at by lot would be neither arbitrary, capricious, an abuse of discretion nor (constitutional questions aside) other-

wise contrary to law if the governing statute authorized the agency to decide in random fashion.

With regard to the award of attorneys' fees, the degree of discretion conferred upon the MSPB is particularly high. That is apparent from the very language of the award provision, which states that the Board "may require payment by the agency involved of reasonable attorney fees incurred by an employee ... if the employee ... is the prevailing party and the Board ... determines that payment by the agency is warranted in the interest of justice." 5 U.S.C. § 7701(g)(1) (Supp.V 1981). The use of the permissive "may" (rather than the mandatory "shall"); the inherently judgmental standard "warranted in the interest of justice"; and the specification "if ... *the Board ... determines that* payment ... is warranted in the interest of justice" (emphasis added); all suggest that the agency is to be given broad leeway in deciding whether to award fees in a particular case. This conclusion is supported by the scant legislative history applicable to the provision. The Report of the Conference Committee which adopted the provision in its final form is not helpful with regard to this issue, *see* H.R.Rep. No. 1717, 95th Cong., 2d Sess. 142 (1978), U.S.Code Cong. & Admin.News, p. 2723; but the Senate Committee Report, addressing a version that was, if anything, *less* suggestive of agency discretion, said that "[t]he circumstances justifying the award of attorney's fees is [*sic*] left to the discretion of the Board to develop in light of its experience." S.Rep. No. 969, 95th Cong., 2d Sess. 61 (1978), U.S.Code Cong. & Admin.News, p. 2783.

In the face of this statutory language and legislative history, it would be unreasonable to believe that Congress meant to go from the general denial of attorneys' fees, which has been the traditional "American Rule," *see, e.g., Alyeska Pipeline Co. v. Wilderness Society,* 421 U.S. 240, 247, 95 S.Ct. 1612, 1616, 44 L.Ed.2d 141 (1975), to a regime in which the agency's refusal to award fees will be subject to close judicial scrutiny and

thus provoke frequent litigation. A pragmatic consideration pointing in the same direction is that the MSPB's fear of judicially mandated fees against the agency might induce it to be less generous in making substantive determinations favoring the employee. One must conclude, in short, that the agency's discretion in this matter is broad, and the scope of our review correspondingly narrow. Application of such a standard should not produce reversal in the present case.

Assuming that the Board's test for awarding attorneys' fees—whether the agency "should have known that it would not prevail on the merits"—with its accompanying obligation of further investigation, applied even at the very last stages of the agency proceeding,* I nonetheless find it impossible to say that the MSPB was arbitrary or capricious in declining to award fees here. What it found crucial was the fact that the principal evidence ultimately vindicating Steger on the unauthorized absence and unauthorized use of vehicle charges had, through Steger's action, been withheld from the agency's deciding official. The 11 exculpatory statements never became part of the record on which that official made the agency decision, because Steger himself had declined the request of the initial hearing officer to retain or copy them, claiming he did not have the witnesses' permission. (That explanation is either implausible—the statements were all in writing and signed, and some of them were under oath—or else indicates a high degree of negligence on Steger's part. He was able to obtain the requisite "permission" at the MSPB stage of the proceedings.) As a consequence, the deciding officer had to rely upon the hearing officer's brief summary of these documents, and was given

reason to doubt the declarants' willingness to stand behind what they had said.

It should be noted, moreover, that although the MSPB found that these documents, when finally submitted and viewed in their entirety, tipped the scales in favor of Steger, they far from demolished the agency's case. All of the declarants denied seeing Steger at home, or him or his agency car at his place of business during working hours. But with two exceptions, none of them claimed to have observed the premises continuously—so that their evidence did not flatly contradict the agency witnesses. The two exceptions were Steger's daughter and his former employee, whose testimony could be deemed less reliable than the more disinterested witnesses on the agency side (who included two couples who were neighbors of Steger's home and business, and one of the agency's warrant officers). Two of the statements also alleged that the two couples giving evidence against Steger bore him a grudge—but, even if true, that would not conclusively disprove their testimony. In other words, it could not be said that, despite the second-hand and unverified fashion in which this information was brought to the deciding officer's attention, DIS was on notice of allegations from reliable sources that utterly destroyed its case.

In these circumstances, it seems to me not at all "arbitrary, capricious [or] an abuse of discretion" for the MSPB to conclude, as it did, that since Steger's own failure to complete the record was partly to blame for the agency's erroneous decision, he should bear his own attorneys' fees. None of the cases cited by the majority in which the Board awarded fees against the agency because of its failure to investigate involved a situation in which it appeared that the employee had the exculpatory evi-

---

* The Board seems to have adopted that assumption here and in several other cases. *Batcher v. Department of Treasury*, No. BN07528010020 AD (Nov. 22, 1982); *O'Donnell v. Department of Interior*, 2 MSPB 604 (1980); *Stout v. Postal Service*, 3 MSPB 440 (1980). I cannot avoid observing, however, (1) that *Allen v. Postal Service*, 2 MSPB 582 (1980), which established the test, explicitly limited its application to the point of time "when [the agency] brought the

proceeding"; and (2) that applying such a test at the conclusion rather than the outset of the proceeding will produce the award of attorneys' fees *whenever* the MSPB reverses the agency action, unless new evidence is introduced before the MSPB—since the agency "should have known" how to apply the law to the facts as well as the MSPB. I leave it to the MSPB to work out this puzzle in the future.

dence in his possession and declined the agency's request to produce it. To make the agency investigate further is one thing; but to make it duplicate evidence which the employee already possesses (and which, but for his negligent failure to obtain permission, if that is to be believed, he could turn over to the agency at once) is quite something else.

The majority opinion, as I understand it, does not reject this basis of distinction, but reverses the Board for not expressly stating that this was the reason the earlier "duty to investigate" cases were inapplicable. That imposes a degree of refinement which I find inappropriate for such discretionary decisions. I think it no more arbitrary for the Board to fail to distinguish its arguably but not clearly inconsistent precedent when it makes fee-award determinations, than it is arbitrary for us to fail to do so when we award or deny attorneys' fees, *e.g., Order, Greene v. Gibralter Mortgage Investment Co.,* No. 82–1391 (D.C.Cir. May 31, 1983); or when we deny a motion for stay, *e.g., Order, Defenders of Wildlife v. The Endangered Species Scientific Authority,* No. 83–1019 (D.C.Cir. Jan. 27, 1983). For agencies, no less than for courts, it is unnecessary to provide the same high degree, not merely of consistency, but of *explicit justification* for all determinations. For highly discretionary judgments such as the present one it suffices, I think, that there are in fact valid grounds relied upon by the agency for treating the case differently from earlier cases. To require that the agency not merely allude to those grounds (which it *did* here) but also identify them as the specific reason for departing from arguably applicable precedent, is to impose intricacies of process reserved for more important and less discretionary determinations. In holding otherwise, the court continues the progressive complication of agency process and encourages the progressive trivialization of the business of appellate courts.