COURT OF APPEALS OF VIRGINIA

Present: Judges Athey, Chaney and Lorish
Argued at Richmond, Virginia


PHARMACANN VIRGINIA, LLC

v.      Record No. 0616-22-2

VIRGINIA BOARD OF PHARMACY

OPINION BY
JUDGE LISA M. LORISH
APRIL 4, 2023

FROM THE CIRCUIT COURT OF HENRICO COUNTY
Richard S. Wallerstein, Jr., Judge

John C. Ivins, Jr. (Mihir V. Elchuri; Hirschler Fleischer, P.C., on
briefs), for appellant.

James E. Rutkowski, Assistant Attorney General (Jason S. Miyares,
Attorney General; Coke Morgan Stewart, Deputy Attorney General;
Allyson K. Tysinger, Senior Assistant Attorney General, on brief),
for appellee.


The Virginia Board of Pharmacy granted PharmaCann Virginia, LLC conditional approval

to operate a pharmaceutical processor to grow cannabis plants, manufacture and package cannabis-

based products, and dispense the products to patients. Board regulations and the conditional

approval order required PharmaCann to complete many requirements necessary for the operation of

a pharmaceutical processor within one year. At the end of that year, PharmaCann had not yet

started construction. Ultimately the Board rejected PharmaCann's proposal for additional time and

denied the permit application. We consider whether the Board abused its discretion by rescinding

PharmaCann's conditional approval or by treating PharmaCann differently from other applicants

who received conditional approval and additional time to complete the permit requirements.

Finding no error in the trial court's review of the same questions, we affirm.

BACKGROUND

*PharmaCann's Permit Application*

The Board may issue one pharmaceutical processing facility permit for each of the five Health Service Areas (HSAs) in Virginia. Code § 54.1-3442.6. Out of a field of nine applicants, the Board conditionally approved PharmaCann's application to operate a new pharmaceutical processor in HSA I in December 2018. The Board's conditional approval order stated that PharmaCann "will have one year from the date of this Order" to complete all regulatory requirements for the acquisition of a permit. The Board's regulations likewise required all applicants to complete the requirements within a year. 18 VAC 110-60-120(E) ("If granted conditional approval, an applicant shall have one year from date of notification to complete all requirements for issuance of a permit . . . .").

PharmaCann then bought about seven acres of land to build the new facility. PharmaCann knew that a gas line was running through the middle of the property when it purchased the land, but did not realize the gas line would prevent construction. The gas line was finally relocated in October 2019, but PharmaCann still did not start construction. Instead, internal documents show PharmaCann decided in September 2019 to not take any further steps on the project without "additional direction" from the Board.

In November 2019, the Board notified PharmaCann that December 21, 2019, was the deadline for PharmaCann to submit an "initial permit" application and that the Board had to also conduct an inspection of the site by that date. This email said that "if deficiencies are identified during the inspection, a written response must be submitted within 14 days of the inspection date that either summarizes the corrective actions taken or provides a date, to be approved by the Board, by which the deficiencies will be corrected." The email also stated that "[t]he Board will

review the submission for approval" and that the Board may conduct a reinspection before issuing a permit.

PharmaCann submitted the permit application with a $60,000 fee, and the Board conducted the inspection. But as there was "nothing to inspect" because PharmaCann had not yet started construction, the Board's inspection found that PharmaCann was not compliant with any of the requirements for a processing facility permit.

In a December 2019 letter, the Board sent a copy of the inspection summary to PharmaCann attached to a letter that stated, "For any cited deficiencies, complete the *Corrective Steps Taken* section and return to the Board of Pharmacy no later than January 9, 2020." The letter also said that the "written response must either summarize the corrective actions taken or provide a date, to be approved by the Board, by which the deficiencies will be corrected" and that "[t]he Board will review the submission for approval."

PharmaCann submitted a timely corrective action plan, requesting re-inspection in November 2020. The plan contained an updated construction schedule, estimating that the company would complete construction in October 2020 and would complete all required audits and state inspections by December 2020. PharmaCann followed up with the Board in February 2020, asking whether the Board had any feedback on the proposed action plan. The Board responded the next day, stating that it was waiting on advice from the Attorney General's office before responding to any applicant about their pending inspections. Shortly after that, the Board notified PharmaCann that it intended to review their plan at the next full Board meeting, in March 2020. The Board stated that it would allow for a "public comment period during which you may provide information to the Board for consideration in making a determination to accept the plan or deny the pharmaceutical processor application."

The Board could not hold its March meeting, however, because of public health concerns related to COVID-19. After the General Assembly authorized public bodies to meet virtually, *see* Va. Acts ch. 1283, § 4-0.01 (April 2020), the Board advised PharmaCann in May that it would review its corrective action plan during a virtual meeting in June 2020. Again, the Board stated that it would allow for a "public comment period during which you may provide information to the Board for consideration in making a determination to accept the plan or deny the pharmaceutical processor application." Leading up to the meeting, PharmaCann sent a letter to the Board requesting a new re-inspection date of June 30, 2021.

Following the June meeting, the Board denied PharmaCann's request for an extension of time to comply with the necessary permit requirements, rescinded conditional approval, and denied the pending permit application. In its written order explaining its decision, the Board made factual findings including that (1) conditional approval was granted on December 21, 2018, by a Board order that "required PharmaCann to complete all of the requirements for the issuance of a permit, including the requirements of 18 VAC 110-60-130(A) through (E), within one year from the date of the Order"; (2) PharmaCann applied for issuance of a pharmaceutical processor permit on December 2, 2019; (3) on December 13, 2019, "an inspector for the Virginia Department of Health Professions found that PharmaCann had failed to complete any of the requirements for the issuance of a permit," specifically citing the fact PharmaCann "had not started construction on a pharmaceutical processor facility"; (4) PharmaCann requested an extension of time on January 9, 2020; (5) "As of June 16, 2020, PharmaCann had not started construction on a pharmaceutical processor facility"; and (6) "PharmaCann asked the Board for an extension until, and a reinspection date of, June 30, 2021." The order then concluded that PharmaCann had not met the requirements of 18 VAC 110-60-120(E) or the Board's conditional approval order.

*The Other Applicants*

The Board granted conditional approval to four other applicants to build facilities in the other four HSAs in December 2018 and also conducted initial inspections of their facilities in December 2019. While one applicant passed the first inspection, three others did not fully pass and, like PharmaCann, had to submit plans of corrective action. Unlike PharmaCann, however, each of these applicants met many of the applicable requirements and had made substantial progress in constructing their facilities. In February 2020, the Board notified these applicants that they must complete all the corrective actions identified in their plans and request a reinspection by the spring or summer of 2020. The Board granted permits to the three other applicants in April, May, and August 2020.

*Proceedings in the Trial Court*

PharmaCann appealed the Board's decision to the circuit court, raising several alleged errors: (1) that the Board failed to follow required procedure under Code § 2.2-4027 and derogated PharmaCann's "rights," (2) that the Board failed to afford PharmaCann procedural due process, (3) that the Board failed to adequately articulate the rationale for its decision, (4) that the Board exceeded its statutory authority, and (5) that the Board unjustifiably treated PharmaCann differently from similarly situated applicants.

Before a hearing on the merits, PharmaCann moved to expand the record to include "those documents evidencing how the Board handled the issuance of Permits to and the corrective action plans submitted by the other" applicants with conditional approval. PharmaCann argued that the court could, and should, expand the record to investigate an allegedly arbitrary and capricious action.

The Board opposed this motion, arguing that it was an improper discovery request, and that PharmaCann had not sufficiently proffered that the additional materials would reveal any

arbitrary and capricious action. Nevertheless, the Board offered to submit into the record the inspection reports of the three other applicants who also did not pass the initial inspection, as well as the proposed corrective action plans and the corresponding Board approval letters. The court agreed to expand the record to include the materials voluntarily provided by the Board, as well as the exhibits attached to PharmaCann's motion to expand and the documents attached to its notice of appeal. But the court denied PharmaCann's motion as to any other documents.

After a hearing on the merits, the trial court found that the Board did not act contrary to law or otherwise abuse its discretion in revoking PharmaCann's conditional approval and denying the permit application. The court also concluded PharmaCann's due process rights were adequately protected. PharmaCann noted a timely appeal.

ANALYSIS

Under Code § 54.1-3442.6, the General Assembly authorizes the Board to "issue pharmaceutical processor permits to operate cannabidiol/THC-A oil production and dispensary facilities in each of the five HSAs in Virginia." *New Age Care, LLC v. Juran*, 71 Va. App. 407, 414-15 (2020). The statute limits the Board to issuing only "one permit for each HSA" and "authorize[s] the Board to adopt regulations establishing health, safety, and security requirements for the pharmaceutical processors." *Id.* at 415. "Pursuant to this statutory authority, the Board enacted regulations establishing a three-stage application process: 'submission of initial application, award[] of conditional approval, and grant[] of a pharmaceutical processor permit.'" *Id.* (quoting 18 VAC 110-60-110(A)). In *New Age Care*, we reviewed a challenge to the Board's decision to award conditional approval to one applicant over another. *Id.* at 417-18. This appeal requires us to look at the next "phase" in the statutory and regulatory scheme—the granting of a permit.

- 6 -

PharmaCann assigns many errors to the trial court's holding below that we address in groups. We start with whether the Board's decisions—to revoke PharmaCann's conditional approval, reject the request for an extension of time to complete the permit requirements, and ultimately deny the permit—exceeded the Board's statutory authority or violated required procedures. Then, we take up PharmaCann's argument that the Board abused its discretion by impermissibly treating it differently from applicants it alleges were similarly situated. As part of this, we consider whether the trial court erred by not further expanding the record to include more materials about these other applicants. Finally, we address PharmaCann's contentions that the Board failed to provide appropriate procedural due process protections by not giving sufficient notice of the Board's hearing and by not adequately articulating the rationale for its decision.[1]

### A. *Appellate review of an agency's decision is limited.*

The Virginia Administrative Process Act (VAPA) governs our review of the Board's actions. The VAPA allows appellate review for four types of legal issues:

> (i) accordance with constitutional right, power, privilege, or immunity, (ii) compliance with statutory authority, jurisdiction limitations, or right as provided in the basic laws as to subject matter, the stated objectives for which regulations may be made, and the factual showing respecting violations or entitlement in connection with case decisions, (iii) observance of required procedure where any failure therein is not mere harmless error, and (iv) the substantiality of the evidentiary support for findings of fact.

Code § 2.2-4027.

---

[1] Some of PharmaCann's assignments of error challenge the way the trial court consolidated various issues and resolved them on constitutional, instead of statutory, grounds. Any issue with the trial court's organization of its analysis would be rendered harmless if there is no merit to PharmaCann's underlying arguments, so we take up those arguments directly.

When an appeal presents issues of fact, we "defer to the agency just as we would a jury or trial court." *Citland, Ltd. v. Commonwealth ex rel. Kilgore*, 45 Va. App. 268, 274 (2005). "Similarly, when the appellant challenges a judgment call on a topic on which 'the agency has been entrusted with wide discretion by the General Assembly,' we will overturn the decision only if it can be fairly characterized as 'arbitrary or capricious' and thus a 'clear abuse of delegated discretion.'" *Id.* at 275 (quoting *Vasaio v. Dep't of Motor Vehicles*, 42 Va. App. 190, 196-97 (2004)). An agency decision is arbitrary or capricious "when it is 'willful and unreasonable' and taken 'without consideration or in disregard of facts or law or without determining principle,' or when the deciding body 'departed from the appropriate standard in making its decision.'" *New Age Care*, 71 Va. App. at 428.

We also afford great deference to an agency's interpretation and application of its own regulations. *MPS Healthcare, Inc. v. Dep't of Med. Assistance Servs.*, 70 Va. App. 140, 147 (2019); Code § 2.2-4027 (requiring reviewing courts to "take due account" of the "experience and specialized competence of the agency" promulgating the regulation). Pure statutory construction, however, requires de novo review. *New Age Care*, 71 Va. App. at 421.

### B. *The regulations authorized the Board to revoke an applicant's conditional approval status where the applicant fails to meet the requirements to qualify for a permit.*

PharmaCann's initial argument is that the regulations do not allow the Board to ever revoke conditional approval once it is given. In other words, PharmaCann argues that "conditional approval" is an irrevocable license that allows the applicant a never-ending time period in which to meet the requirements for a processing permit. We start with reviewing the governing statutes and regulations. The statute governing the operation of pharmaceutical processors and cannabis dispensing facilities in Virginia vests the Board with the authority to promulgate regulations on the operation of such facilities, including the process to obtain a permit to lawfully operate a facility. Code § 54.1-3442.6. The Board issued a series of

- 8 -

regulations governing pharmaceutical processors at 18 VAC 110-60-10 to -330. The application process for pharmaceutical processor permits is set out in 18 VAC 110-60-110 and includes "three stages: submission of initial application, award of conditional approval, and grant of a pharmaceutical processor permit."

Conditional approval is discussed in 18 VAC 110-60-120. This regulation sets out reasons the Board "may disqualify any applicant," including if an applicant "[f]ails to comply with all requirements for a pharmaceutical processor." 18 VAC 110-60-120(C)(4). After detailing the way the Board considers applications, the regulation concludes by stating:

> If granted conditional approval, an applicant shall have one year from date of notification to complete all requirements for issuance of a permit, to include employment of a [pharmacist-in-charge, as defined in 18 VAC 110-60-10], responsible party, and other personnel necessary for operation of a pharmaceutical processor, construction or remodeling of a facility, installation of equipment, and securing local zoning approval.

18 VAC 110-60-120(E).

Finally, 18 VAC 110-60-130 governs the granting of a pharmaceutical processor permit. The "board may issue a pharmaceutical processor permit when all requirements of the board have been met, to include . . . [a] satisfactory inspection of the facility conducted by the board or the board's agents." 18 VAC 110-60-130(A). The regulation also establishes:

> If an applicant has been awarded a pharmaceutical processor permit and has not commenced operation of such facility within 180 days of being notified of the issuance of a pharmaceutical processor permit, the board may rescind such permit, unless such delay was caused by circumstances beyond the control of the permit holder.

18 VAC 110-60-130(D).

To support its theory that the Board's actions did not comply with the regulations, PharmaCann points to the way the regulations expressly allow the Board to rescind a permit if the applicant has "not commenced operation of such facility within 180 days" of a permit's

receipt, and suggests there is no similar provision allowing the Board to revoke conditional approval.

But we agree with the Board that the regulations authorize it to terminate an applicant's "conditional approval." The receipt of "conditional approval" clears a pathway for an applicant to receive a permit, removing competitors for the time being, but subjects the applicant to many requirements. A hopeful processor with conditional approval is still an "applicant" for a permit under the regulations. *See* 18 VAC 110-60-120(E) ("[i]f granted conditional approval, an *applicant* shall have one year from date of notification to complete all requirements for issuance of a permit" (emphasis added)). Thus, because the same regulation authorizes the Board to "disqualify any *applicant* who . . . [f]ails to comply with all requirements for a pharmaceutical processor," 18 VAC 110-60-120(C)(4) (emphasis added), the Board may rescind conditional approval and deny such an applicant's permit application. The denial of a permit ends the three-stage process altogether. The need for strict deadlines is unsurprising given that the Board is allowed to grant only one pharmaceutical processor permit per HSA region.

C. *The Board did not abuse its discretion in revoking PharmaCann's conditional approval and denying PharmaCann a processing permit.*

The next question is whether the Board erred in exercising its discretion to deny PharmaCann a permit, effectively terminating PharmaCann's "conditional approval" status. The Board's order made factual findings that included the date the Board gave PharmaCann conditional approval, the fact that the conditional approval order gave PharmaCann one year to meet the requirements of 18 VAC 110-60-130, and that PharmaCann had completed none of the requirements within the year. Ultimately, the Board's conclusion was that PharmaCann had not met the requirements of 18 VAC 110-60-120(E) (which specified applicants with conditional approval had "one year" to meet the requirements for issuance of a permit), 18 VAC 110-60-130

- 10 -

(specifying all the requirements to receive a processor permit), or the Board's conditional approval order.

As discussed above, the regulations permitted the Board to revoke an applicant's conditional permit status if the applicant "[f]ail[ed] to comply with all the requirements for a pharmaceutical processor." 18 VAC 110-60-120(C)(4). The Board was entitled, but not required, to disqualify any applicant who failed to meet the one-year time frame. *See id.* ("[t]he board *may* disqualify . . ."). Or the Board could exercise its discretion to give the applicant additional time to complete the requirements, such as approving a proposed corrective action plan. But nothing in the statutes or regulations *required* the Board to grant the lengthy extension PharmaCann requested.

It is undisputed that PharmaCann failed to even begin construction within "one year from date of notification" that it received "conditional approval" as required by the regulations. Given this fact, which was specifically outlined in the Board's order, we cannot say the Board's decision was without "determining principle" or a deviation from "the appropriate standard in making its decision." *New Age Care*, 71 Va. App. at 428; *see also MPS Healthcare*, 70 Va. App. at 147 (appellate courts must afford great deference to an agency's interpretation and application of its own regulations).[2]

---

[2] We reject PharmaCann's invitation to conclude from a single sentence from within a paragraph of factual findings within the Board's order—that "[a]s of June 16, 2020, PharmaCann had not started construction on a pharmaceutical processor facility"—that the Board's decision improperly penalized PharmaCann for failing to begin the work outlined in its corrective action plan, before receiving Board approval of the plan. *See, e.g.*, *Yarborough v. Commonwealth*, 217 Va. 971, 978 (1977) (explaining why a reviewing court does not "fix upon isolated statements" by a factfinder "taken out of the full context in which they were made, and use them as a predicate for holding the law has been misapplied"). Even if the Board did consider PharmaCann's failure to begin construction in the months before the June meeting, PharmaCann fails to argue how this Court has authority to review a violation of its "expectation" that it needed to wait for Board approval before taking action. *See* Code § 2.2-4027 (limiting appellate

*D. The Board did not abuse its discretion by treating PharmaCann differently from other applicants with conditional approval.*

PharmaCann's next argument is that the Board abused its discretion by treating it unfairly as compared to the other applicants who also failed to meet all the requirements for a processor permit within a year. PharmaCann alleges these applicants were similarly situated and that the Board treated PharmaCann differently without cause. PharmaCann argues both that the existing record shows it was similarly situated to the three other companies that received extensions, and ultimately permits, but also that the trial court erred by not expanding that record to include all of the "documents evidencing how the Board handled the issuance of Permits to and the corrective action plans submitted by the other" permit applicants.[3]

Under the VAPA, the "circuit court's role in an appeal from an agency decision is equivalent to an appellate court's role in an appeal from a trial court." *Sch. Bd. of Cnty. of York v. Nicely*, 12 Va. App. 1051, 1062 (1991). Rule 2A:3(c) explains:

> The record on appeal from an agency proceeding consists of all notices of appeal, any application or petition, all orders or regulations promulgated in the proceeding by the agency, the opinions, the transcript or statement of the testimony filed by appellant, and all exhibits accepted or rejected, together with such other material as may be certified by the agency secretary to be a part of the record.

While discovery is generally precluded in administrative appeals, "it is within the trial court's discretion" to accept additional evidence "to resolve claims of arbitrary action or bad faith."

---

review of an agency's action to "error[s] of law"). We elsewhere explain why the Board's action was constitutional and did not contravene applicable statutes or regulations.

[3] The Board suggests that a decision to approve or deny a corrective action plan is not a "case decision, final order, or adverse decision" subject to appeal under Code §§ 2.2-4001, 2.2-4019(A)(v), and 2.2-4023. We do not take up this question here because the Board considered whether to approve PharmaCann's corrective action plan as part of its final July 9 order to simultaneously "deny PharmaCann's request for an extension, rescind conditional approval, and deny PharmaCann's application for a pharmaceutical processor permit in health service area 1."

*Loudoun Hosp. Ctr. v. Stroube*, 50 Va. App. 478, 509 (2007). "[S]uch evidence should be limited to that purporting to show that the agency denied the applicant a fair and impartial review of his application in accordance with proper procedures." *St. Bd. of Health of Commw. of Va. v. Godfrey*, 223 Va. 423, 434 (1982).

If an agency treats similarly situated applicants dissimilarly, it acts in an arbitrary and capricious manner. *Bd. of Supervisors of Fairfax Cnty. v. McDonald's Corp.*, 261 Va. 583, 591 (2001) ("[I]mpermissible discrimination" is one way to show an agency was "unreasonable, arbitrary, and capricious."). Indeed, an agency "can be said to be at its most arbitrary" when it "treat[s] similar situations dissimilarly." *Kirk v. Comm'r of Soc. Sec. Admin.*, 987 F.3d 314, 321 (4th Cir. 2021) (alteration in original) (quoting *Steger v. Def. Investigative Serv. Dep't of Def.*, 717 F.2d 1402, 1406 (D.C. Cir. 1983)). Thus, if PharmaCann could show that the Board treated it differently from similarly situated applicants, without cause, the Board's actions would be "arbitrary or capricious" and taken "without consideration or in disregard of facts or law or without determining principle." *New Age Care*, 71 Va. App. at 428. Disparate treatment claims may often rely on evidence falling outside the agency's record as to the complaining party. But, as always, discovery matters are within the discretion of the trial court and we review a decision to deny a motion to augment the record for abuse of discretion. *Loudoun Hosp. Ctr.*, 50 Va. App. at 509.

PharmaCann sought to expand the record below to include "those documents evidencing how the Board handled the issuance of Permits to and the corrective action plans submitted by the other" permit applicants. These documents, PharmaCann alleges, "bear directly on whether PharmaCann received disparate treatment and, therefore, bear directly on whether the Board acted arbitrarily and capriciously." While it opposed PharmaCann's motion, "in an effort to expedite" the appeal, the Board voluntarily supplemented the record with "inspection reports and

- 13 -

corrective actions plans submitted to the Board by the other pharmaceutical processors" and "the Board's approval letter for each of their corrective action plans."[4]  The Board renews the argument it made below—that no additional discovery was appropriate because the documents provided demonstrated that the other three applicants granted permits after the one-year mark "were working diligently to construct, and nearing completion of, a pharmaceutical processor facility" and that "though they may not have passed the inspection on their first try, they each submitted corrective action plans that were in fact addressing specific issues identified by the inspector, and each entity stated it was actively working to remedy those issues."[5]

We cannot say the trial court abused its discretion in concluding that no additional documents were necessary to resolve PharmaCann's contention of "arbitrary action."  The documents volunteered by the Board showed the other applicants who received additional time to complete the necessary requirements before receiving a permit were leagues ahead of PharmaCann at the time of the initial inspections in December 2019.  Whereas PharmaCann failed to even begin construction within the first year, the other applicants had each made substantial progress in developing their facilities in the first year.  One applicant was finished by the December 2019 inspections, and the other three received their final permits in April, May, and August of 2020, respectively.  By contrast, in the lead-up to the Board meeting, PharmaCann

---

[4] Because the Board voluntarily provided these documents, we express no opinion about whether production was necessary under *Loudoun Hospital Center*, 50 Va. App. at 509.

[5] The Board also argues that PharmaCann failed to make a proffer about the content of the unprovided documents.  While we have required a party to "proffer or avouch the evidence" excluded at an administrative proceeding, because "otherwise, the appellate court has no basis to decide whether the party was prejudiced by the [administrative body's] error," *Daniel Constr. Co. v. Tolley*, 24 Va. App. 70, 79 (1997) (quoting *Smith v. Hylton*, 14 Va. App. 354, 357-58 (1992)), we decline to extend that principle to a court's determination of whether documentary discovery is appropriate.  While a party knows about the evidence it intended to introduce at a hearing from which it can make a proffer, it will be the rare circumstance that a party could make a proffer as to the contents of documents it has not seen.

proposed a new re-inspection date for its facility in June 2021. These same factors lead us to readily conclude that PharmaCann was not similarly situated to the other applicants, so the Board did not abuse its discretion by treating PharmaCann differently.

*E. The Board provided PharmaCann with adequate procedural due process.*

Lastly, PharmaCann argues the Board failed to follow required procedures or otherwise violated PharmaCann's due process rights by failing to give adequate notice of the Board's June 2020 meeting or an adequate basis for its final decision.

"When procedural due process respecting deprivation of a property interest is challenged, a two-step inquiry is employed." *McManama v. Plunk*, 250 Va. 27, 34 (1995). First, we consider "whether the interest is a property interest protected by procedural due process guarantees; if so, the second [consideration] is whether the procedures prescribed or applied are sufficient to satisfy the due process 'fairness' standard." *Id.* (quoting *Klimko v. Va. Emp. Comm'n*, 216 Va. 750, 754 (1976)). Here, the parties agree that PharmaCann had a protected property interest in its conditional approval. The question is only whether the Board's May 2020 notice to PharmaCann—that at the meeting it would make a determination to "accept the [corrective action] plan or deny the pharmaceutical processor application"—was sufficient to inform PharmaCann of the subjects to be considered at the June 2020 meeting. PharmaCann alleges that the notice failed to inform it that (1) the Board would consider its December 2019 inspection, (2) the Board might rescind its conditional approval, and (3) the Board would compare PharmaCann to other applicants in making its final decision.

In assessing whether notice was adequate, we consider whether the notice was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Oak Hill Nursing Home, Inc. v. Back*, 221 Va. 411, 417 (1980) (quoting *Mullane v. Cent. Hanover Tr. Co.*, 339

U.S. 306, 314-15 (1950)).  Notice of a hearing satisfies the requirements of due process if it is "timely and reasonably specific," informing the affected party "of the subjects to be considered at the hearing."  *Va. Dep't of Corrs. v. Compton*, 47 Va. App. 202, 223 (2005) (quoting *Narrows v. Clear-View Cable TV, Inc.*, 227 Va. 272, 283 (1984)).  We have never said that procedurally adequate notice requires an agency to detail everything it may rely on at a hearing, and we will not do so today.  PharmaCann was on notice about both possible outcomes that could result from the June 2020 meeting—either the Board would approve the proposed corrective action plan allowing PharmaCann to remain in "conditional approval" status or it would deny the permit application altogether.  Thus, we cannot say the trial court abused its discretion in concluding that PharmaCann had sufficient notice.

PharmaCann also argues that the Board did not provide an adequate explanation of its decision.[6]  For informal administrative decisions, such as this one, a party is entitled to "be informed, briefly and generally in writing, of the factual or procedural basis for an adverse decision in any case."  Code § 2.2-4019(A)(v); *Va. Ret. Sys. v. Cirillo*, 54 Va. App. 193, 199 (2009).  In *Cirillo*, we found an agency's decision insufficient when there were "three rationales by which" the agency could have denied an application for disability retirement under Code § 51.1-156(E), but the final decision only generally stated that the applicant had not "satisfied each element of" the statute.  *Id.* at 197-201.  While the applicant in *Cirillo* was left to wonder

---

[6] The Board argues PharmaCann procedurally defaulted this assignment of error by not raising this issue before the agency, citing *Doe v. Va. Bd. of Dentistry*, 52 Va. App. 166, 179 n.9 (2008) (en banc).  In *Doe*, we held that though the appellant had no opportunity to raise procedural objections to the agency's final order during the hearing preceding that order, he could have raised the objections in a motion to reconsider or stay.  But that case, unlike this one, involved a formal hearing where parties are expressly entitled to file motions for reconsideration in which they can preserve their objections, and where proceedings resemble the formal character of trial.  *See* Code §§ 2.2-4020, -4023.1.  Because we find the Board's explanation was adequate in any event, we reserve for another day the question of whether *Doe* applies when a party argues that a final order following an informal administrative proceeding violates Code § 2.2-4019(A)(v).

about which element it failed to meet, here, the Board informed PharmaCann it has failed "to complete any of the requirements for the issuance of the permit." The order also specifically cited the one-year requirement that PharmaCann readily concedes it did not meet. Thus, the trial court was not deprived "of the rationale of the administrative decision" or "impeded" in its review. *Id.* at 203. The trial court cannot be said to have abused its discretion in concluding notice was sufficient under these facts.

## CONCLUSION

For these reasons, we affirm the decision of the trial court.

*Affirmed*.